# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JUAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 09 C 2653 |
| | ) | |
| PARK FOREST COOPERATIVE IV, | ) | Judge Ronald A. Guzmán |
| an Illinois not-for-profit corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Juan Jones has sued his former employer, Park Forest Cooperative IV, for discrimination based on race and ethnicity and retaliation in violation of 42 U.S.C. § 1981 (Counts I and II) and for retaliation in violation of Illinois law (Count III). Defendant has moved pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Count III, his retaliatory discharge claim under Illinois common law.[1] For the reasons provided in this Memorandum Opinion and Order, the Court denies the motion.

## Facts

Jones, an African-American male, was employed as a Grounds Staff Person at Park Forest Cooperative ("Park Forest"). (Second Am. Compl. ¶ 5.) Jones reported directly to a Maintenance Supervisor, Roberto Ruiz. (*Id.* ¶ 15.) The Property Manager, Jodi Tas, supervised Ruiz. (*Id.* ¶¶ 14-15.) Prior to his termination, Jones had received several awards for exceptional performance of his duties, as well as a raises in pay. (*Id.* ¶¶ 6-11.)

---

[1] Defendant moved to dismiss Count II and III of the First Amended Complaint. (Def.'s Mot. Dismiss 1.) Plaintiff conceded that dismissal of Count II of the First Amended Complaint was appropriate and amended the complaint to omit the claim and replaced Count II with a section 1981 retaliation claim. (Pl.'s Mot. Leave File Second Am. Compl 1-2.) However, because Count III remained substantively unchanged in the Second Amended Complaint, the Court now addresses defendant's motion to dismiss Count III.

Plaintiff's employment included a health benefits reimbursement plan. (*Id.* ¶ 51.) Payment for the plan was withheld from plaintiff's paycheck each month by defendant, and, plaintiff believed, paid by defendant to the insurance carrier. (*Id.* ¶ 55.) On or about December 1, 2006, plaintiff sought reimbursement from the health insurance carrier for deductibles paid out-of-pocket by plaintiff. (*Id.* ¶ 20.) When plaintiff's reimbursement request was denied, plaintiff discovered that defendant had not made payments required to maintain the plan. (*Id.* ¶ 21.)

On December 12, 2006, Tas completed an allegedly false disciplinary report of plaintiff. (*Id.* ¶ 18.) On December 15, 2006, plaintiff complained to Tas about being unfairly disciplined when Sandy Isaac, a bookkeeper employed by the defendant whose job duties included making the health benefit plan payments to the insurance carrier, had not been disciplined for her failure to pay the insurance carrier in a timely manner. (*Id.* ¶¶ 13, 22.) Plaintiff openly demanded reimbursement for out-of-pocket medical expenses incurred as a result of the failure to pay the healthcare insurance premiums. (*Id.* ¶ 61b-c.)

Plaintiff alleges that Isaac, who reported directly to Tas, sought to persuade Tas to terminate plaintiff due to his complaints and his assertion of racial discrimination. (*Id.* ¶¶ 25-26.) After December 15, 2006, plaintiff received false, adverse, work-related performance reports made to justify his subsequent termination. (*Id.* ¶ 23.) In April and May 2007, Tas issued plaintiff official warnings of imminent termination for substandard performance. (*Id.* ¶¶ 44-45.) Shortly thereafter, Tas terminated plaintiff. (*Id.*)

On July 9, 2007, plaintiff filed a discrimination charge with the Illinois Department of Human Rights, alleging harassment, failure to promote and discharge due to race. (*Id.* ¶ 33.)

The charge was dismissed on jurisdictional grounds,[2] and plaintiff commenced this suit in federal court. (*Id.* ¶ 34.) Plaintiff seeks compensatory damages, attorney's fees and costs and injunctive relief in the form of reinstatement to his position with a retroactive promotion. (*Id.* ¶¶ 10, 15.)

## Discussion

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). While the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555 (citation omitted).

Plaintiff alleges a claim under the common law tort of retaliatory discharge. (Second Am. Compl. ¶ 60.) In Illinois, an employer can terminate an at-will employee "for any reason, or no reason." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009); *accord Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. 1985). The tort of retaliatory discharge provides "a limited exception to this rule." *Buckner v. Atl. Plant Maint., Inc.,* 694 N.E.2d 565, 568 (Ill. 1998). To state a claim for retaliatory discharge, "an employee must show that he was dismissed in retaliation for his activities, and that the dismissal was in contravention of a clearly mandated public policy." *Fellhauer v. Geneva*, 568 N.E.2d 870, 875 (Ill. 1991); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981) (requiring the same elements); *Kelsay v. Motorola, Inc.,* 384 N.E.2d 353, 357 (Ill. 1978) (first recognizing the existence of the tort).

---

[2] Plaintiff's charge rested on the Illinois Human Rights Act, 775 Ill. Comp. Stat. 5/7A-102, which applies to employers with at least fifteen employees. Defendant employs less than fifteen employees, so the IDHR dismissed the suit because defendant did not fall within the definition of "employer" in 775 Ill. Comp. Stat. 5/2-101(B)(1)(a).

3

The public policy of a state "is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." *Turner*, 911 N.E.2d at 374. However, mere citation of a constitutional or statutory provision is insufficient to state a claim; "[r]ather, a plaintiff must demonstrate that the public policy mandated by the cited provision is violated by his discharge." *Fellhauer*, 568 N.E.2d at 875. A clearly mandated public policy "concerns what is right and just and what affects the citizens of the State collectively" and "strike[s] at the heart of a citizen's social rights, duties, and responsibilities." *Palmateer*, 421 N.E.2d at 878.

Courts first recognized the tort by identifying in the Workers' Compensation Act a strong public policy favoring employees' right to make workers' compensation claims. *Kelsay,* 384 N.E.2d at 357; *see Hinthorn v. Roland's of Bloomington*, 519 N.E.2d 909, 911 (Ill. 1988); *Gonzalez v. Prestress Eng'g Corp.*, 503 N.E.2d 308, 312 (Ill. 1986); *Darnell v. Impact Indus., Inc.*, 473 N.E.2d 935, 937 (Ill. 1984).

Retaliatory discharge also encompasses "whistleblowing" activities by employees. *Palmateer*, 421 N.E.2d at 879; *Wheeler v. Caterpillar Tractor Co.*, 485 N.E.2d 372, 377 (Ill. 1985). Recognition of whistleblowing rests on the public's interest in enforcing its criminal laws, as well as the "effective protection of the lives and property of citizens" through "citizen crime-fighters" who voluntarily report an employer's potentially illegal activity to law enforcement. *Palmateer*, 421 N.E.2d at 879-80. Specifically, courts have recognized claims where the employee reported potential illegal activity, *id.* at 877, and where an employee refused to violate a statute at his employer's request. *Blount v. Stroud*, 904 N.E.2d 1, 9 (Ill. 2009) (refusal to commit perjury); *Wheeler*, 485 N.E 2d at 376 (refusal to work with radioactive material under conditions violating federal regulations); *Russ v Pension Consultants Co.*, 538 N.E.2d 693, 699 (Ill. App. Ct. 1989) (refusal to violate tax code).

Contrary to plaintiff's contention that courts have not limited the tort, the Illinois Supreme Court "has consistently sought to restrict the common law tort of retaliatory discharge." *Fisher v. Lexington Health Care*, 722 N.E.2d 1115, 1121 (Ill. 1999); *see Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491, 493 (Ill. 1998) (noting that retaliatory discharge actions are allowed in two settings, workers' compensation and whistleblowing); *Barr,* 478 N.E.2d at 1356 (noting the Court has not rejected a narrow interpretation of the tort). Through restriction of the tort, courts seek "a proper balance . . . among the employer's interest in operating a business efficiently and profitably, the employee's interest in earning a livelihood, and society's interest in seeing its public policies carried out." *Turner*, 911 N.E.2d at 502.

Illinois courts have been particularly unwilling to expand the tort to policies regarding economic rights or economic regulation. *See Lizak v. Great Masonry, Inc.*, No. 08 C 1930, 2009 WL 855952, at *2 (N.D. Ill. Mar. 30, 2009) (declining to recognize retaliatory discharge claim based on the policy contained in the Illinois Minimum Wage Act); *Chi. Commons Ass'n. v. Hancock*, 804 N.E.2d 703, 705 (Ill. App. Ct. 2004) (refusing to recognize retaliatory discharge claim based on litigation of wage dispute); *Geary v. Telular Corp.*, 793 N.E.2d 128, 134 (Ill. App. Ct. 2003) (declining to recognize retaliatory discharge claim based on the policy contained in the Illinois Wage Payment and Collections Act).

Plaintiff alleges that he reported defendant's failure to make proper payments, that his actions were whistleblowing, and that the criminal sanctions in the Illinois Employee Benefits Contribution Act (hereinafter "the Act") bring this case within the clearly mandated public policy recognized in *Palmateer.* (Second Am. Compl. ¶¶ 52-54; Pl.'s Resp. Opp'n Def.'s Mot. Dismiss 5.)

In *Palmateer*, plaintiff alleged retaliatory discharge after he reported a coworker's possible criminal activity that violated the public policy as stated in the Illinois Criminal Code.

421 N.E.2d at 877. The Illinois Supreme Court found that there is "no public policy more basic, nothing more implicit in the concept of ordered liberty than the enforcement of a State's criminal code." *Id.* at 879 (citation omitted). The court found the Criminal Code carries with it undeniable public policy interests encouraging the "citizen crime-fighter" who "cooperates to protect the general public from criminal activity." *Id.* at 880. *Palmateer* also noted that "the magnitude of the crime is not the issue." *Id.* Something as minor as "the theft of a $2 screwdriver" would be sufficient to trigger the public policy of the Criminal Code because the defendant's "business judgment, no matter how sound, cannot override [the General Assembly's] decision [to subject a minor theft to criminal sanctions]." *Id.*

In the present case, the Employee Benefit Contribution Act provides that an employer who promises health benefits to employees must pay premiums in a timely manner, or give the employee thirty days' written notice that benefits will no longer be paid. 820 Ill. Comp. Stat. 160/1 (2009). An employer's first violation is a "business offense," which carries a one hundred dollar fine; a second violation is a Class B misdemeanor under Illinois law. *Id*. The legislature's inclusion of this criminal penalty in the statute brings this case within *Palmateer*'s public policy rationale. The Act's criminal sanctions mean that an individual who reports a violation is the "citizen crime-fighter" contemplated by *Palmateer*. Thus, the public policy in favor of enforcement of the state's criminal laws applies.

Defendant argues that plaintiff has not stated a valid claim for retaliatory discharge because plaintiff did not report the allegedly illegal action to law enforcement. (Mot. Dismiss ¶¶ 19-21.) However, an employee's claim does not "depend[] upon whether a complaint was made to the regulatory authorities" or "whether [the authority's] investigation preceded or followed that complaint." *Wheeler*, 485 N.E.2d at 376; *accord Sherman v. Kraft*, 651 N.E.2d 708, 710-11 (Ill. App. Ct. 1995) (considering whether plaintiff adequately pleaded that he complained to his

6

employer); *Howard v. Zack*, 637 N.E.2d 1183, 1191 (Ill. App. Ct. 1994) (recognizing retaliatory discharge claim where employee reported employer's violations of federal regulations to employer's agents); *Russ*, 538 N.E.2d at 699-700 (denying motion to dismiss where employee refused to comply with employer's request to violate statute); *Johnson v. World Color Press*, 498 N.E.2d 575, 578-79 (Ill. App. Ct. 1986) ("It does not matter that the plaintiff in the present case alleged that he only complained to his superiors and not to law-enforcement officials.")

Plaintiff alleges that he complained to his supervisor about activity that has been deemed by the Illinois legislature to be criminal and he was discharged in retaliation for having done so. (Second Am. Compl. ¶¶ 22, 44-45.) According to the principles outlined in *Palmateer* and its progeny, this is sufficient to state a claim for common law retaliatory discharge.

### Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss Count III of the Second Amended Complaint.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

**February 26, 2010**

*Ronald A. Guzman*

　　　　　　　　　　　　　　　　　　　　　　　**HON. RONALD A. GUZMA**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**