**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **JUAN JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **09 C 2653** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **PARK FOREST COOPERATIVE IV,** | ) | |
| **an Illinois not-for-profit corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Juan Jones ("Jones") has sued his former employer, Park Forest Cooperative IV ("Park Forest"), alleging that Park Forest: (1) discriminated against him in violation of 42 U.S.C. § 1981 on the basis of his race when it failed to promote him to a position on the maintenance staff; (2) retaliated against him in violation of 42 U.S.C. § 1981 when it terminated him after he complained of race discrimination to his immediate supervisor; and (3) retaliated against him in violation of Illinois law when Park Forest terminated him after he complained and reported that Park Forest failed to make required health insurance benefits payments. Before the Court are Park Forest's motion to deem admitted and strike plaintiff's Local Rule 56.1 supplemental statement in part and motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. For the reasons provided herein, the Court denies the former motion as moot and grants the latter motion.

**I. Defendant's Motion To Deem Admitted Its Statement of Facts and Strike Plaintiff's Supplemental Statement of Facts in Part**

As a matter of course, the Court independently assesses whether the parties have complied with Local Rule 56.1 and determines whether the particular portions of the record upon which the parties rely are admissible. *See, e.g., Sherden v. Cellular Advantage, Inc.*, No. 07 C 1006, 2009 WL 1607598, at *2 (N.D. Ill. June 9, 2009) (denying motion to strike portions of movant's Local Rule 56.1 statement of facts because the court would only consider admissible evidence on summary judgment regardless). However, after determining on its own whether plaintiff has complied with Local Rule 56.1, the Court grants the motion to the extent that it requests that the Court deem admitted Park Forest's Local Rule 56.1 statement of facts for the following reasons.

Summary judgment motions are governed by Rule 56 and Local Rule 56.1, both of which this Court strictly enforces. *See, e.g., Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) ("District courts are entitled to strict compliance with Rule 56.1." (quotations omitted)). Local Rule 56.1 requires that the non-moving party respond to the moving party's statement of undisputed facts with numbered paragraphs, corresponding to and stating a concise summary of the paragraph to which it is directed, and, in the event of any disagreement, with specific references to affidavits, the record, or other supporting materials. N.D. Ill. LR 56.1(b)(3). Failure to make a proper denial, such as a denial without a citation to the record or a denial with a citation to an entire deposition transcript or lengthy exhibit, will result in the improperly denied fact being deemed admitted. *Id.* 56.1(b)(3)(C); *see Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818 (7th Cir. 2004) ("A court should not be expected to

review a lengthy record for facts that a party could have easily identified with greater particularity.").

In this case, Jones failed to comply with the Local Rule 56.1 when he did not file any numbered responses to the movant's statement of facts as required by Local Rule 56.1(b)(3). As a consequence of Jones' non-compliance with Local Rule 56.1, the Court deems admitted all properly cited facts contained in Park Forest's Local Rule 56.1 statement of facts. *See Zehrung v. United Auto Workers Local 663*, 269 Fed. Appx. 585, 587 (7th Cir. 2008) (holding district court did not abuse discretion in deeming admitted movant's Local Rule 56.1 statement of facts when non-movant failed to provide a proper Local Rule 56.1 response).

Further, Park Forest also moves to strike portions of Jones' supplemental statement of facts because they have not been properly authenticated and are therefore hearsay. However, even if Jones had provided proper authentication for the business records, the Court would still grant summary judgment in defendant's favor. Thus, to the extent that Park Forest's motion seeks to strike Plaintiff's Group Exhibit A, Exhibit F, and Exhibit A-1, the Court denies the motion as moot.

## **Facts**[1]

Park Forest hired Juan Jones, an African-American male, on around June 7, 2004, for a grounds staff position. (Def.'s LR 56.1(a)(3) Stmt. ¶ 6.) The grounds staff was part of the maintenance department at Park Forest, which was divided between grounds staff and maintenance staff. (*Id.* ¶ 13.) Within the maintenance department, a grounds staff position was lower than a maintenance staff position. (*Id.* ¶ 14.) During the time period from August 11,

---

[1]Unless otherwise noted, the following facts are undisputed, admitted or deemed admitted under Local Rule 56.1.

2004 to December 27, 2005, Jones received four bonuses of $100.00 each for exemplary work performance as a grounds staff member. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 3.)

From 2004 through 2006, Robert Ruiz was Jones' immediate supervisor. (*Id.* ¶¶ 25, 37; Second Am. Compl. ¶ 16.) Ruiz had knowledge of Jones' maintenance skills and also provided some maintenance skill training to Jones. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 15-16.)

As of December 8, 2006, Jodi Tas became property manager and supervised the entire maintenance department, including Ruiz and Jones. (Def.'s LR 56.1(a)(3) Stmt. ¶ 10; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 21.) Tas also supervised Sandy Isaac, Park Forest's bookkeeper. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 15.) Isaac was responsible for paying the invoices for monthly premiums for health and dental insurance for Park Forest employees, including Jones, at all relevant times to this action, but she was not responsible for administration of the employee insurance plan, which included Park Forest's health reimbursement agreement. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 21-22.) Instead, Employee Benefits Corporation ("EBC") managed reimbursement for medical and dental claims under Park Forest's health reimbursement agreement. (*Id.* ¶ 25.) At all times, Isaac timely paid all insurance premiums on behalf of Park Forest, and there were no lapses in employee insurance coverage. (*Id.* ¶ 26.)

Steve Lundy ("Lundy") was Park Forest's insurance broker and the EBC health reimbursement agreement representative. (*Id.* ¶ 37; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23.) On December 12, 2006, Lundy held an open meeting at Tas' office to discuss the employee health insurance plan with Park Forest employees. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 23.) Jones attended this meeting and complained to Lundy that his Park Forest insurance was not covering his bills. (Def.'s Ex. B, Jones Dep. at 127.) Lundy responded the next day, December 13, 2006, via letter, advising Jones that he was eligible for a $2,000.00 reimbursement and requesting that he

complete certain necessary forms to obtain his refund. (Def.'s LR 56.1(a)(3) Stmt. ¶ 40; Def.'s Ex. B, Jones Dep. Ex. 7, Letter from Lundy to Jones of 12/13/06.)

Throughout 2006, Jones received various warnings and negative evaluations from Park Forest. On August 15, 2006, Jones received a "Step-by-Step Employee Warning Report" for substandard work quality and insubordination. (Def.'s Ex. F, Isaac Aff. ¶ 7; *id.*, Ex. Step-By-Step Employee Warning Report.) On October 21, 2006, Jones received a written warning that he had failed to produce proof of motor vehicle insurance, which was required because he drove a Park Forest vehicle. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 30-31.) In fact, Jones admitted that he had failed to maintain motor vehicle insurance yet continued to operate a Park Forest motor vehicle. (Def.'s Ex. B, Jones Dep. at 100.) On November 7, 2006, Jones received a memo advising him that he had utilized all of his sick days for the year and admonishing him about his history of coming to work late. (Def.'s LR 56.1(a)(3) Stmt. ¶ 32.) He was further warned about using Park Forest cell phones for personal calls. (*Id.*) Jones admitted that he used more sick days than permitted by Park Forest in 2006. (Def.'s Ex. B, Jones Dep. at 146.) After Tas was promoted to property manager in December 2006, Jones received another "Step-by-Step Employee Warning Report" for violating Park Forest's requirement that he maintain motor vehicle insurance, as well as for unsatisfactory behavior toward another employee. (Def.'s LR 56.1(a)(3) Stmt. ¶ 35.) Jones was suspended from December 12 to 15, 2006, and Tas told Jones that if he did not return to work on December 15 with a valid, current insurance card, he would be terminated. (*Id.* ¶ 36; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 28.) On December 15, 2006, Tas prepared and issued to Jones an "unsatisfactory" Annual Performance Appraisal, indicating that Jones needed to show more respect to his co-workers. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 30.)

Between December 15, 2006, the date on which Jones returned from being suspended, and January 2, 2007, he applied for a vacant maintenance staff position at Park Forest. (*Id.* ¶ 31; Def.'s LR 56.1(a)(3) Stmt. ¶ 40.) The maintenance staff position would have been a promotion for Jones. (Def.'s LR 56.1(a)(3) Stmt. ¶ 43.) However, Ruiz did not believe Jones was qualified for the maintenance staff position, and Ruiz recommended that Tas not hire Jones for the position. (*Id.* ¶¶ 45-46.) Instead, Ruiz recommended James Walsh, a white male, for the maintenance staff position, because he believed Walsh to be a more qualified candidate. (*Id.* ¶ 48.) The job description for the Park Forest maintenance staff position gave preference to candidates with course work in maintenance and grounds-related information and two years of experience in a housing, or housing and grounds, maintenance position. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 35.) At the time of Walsh's application, Walsh had three months of experience in maintenance and no relevant certifications or diplomas. (*Id.* ¶¶ 34, 36.)

On January 2, 2007, Tas interviewed Jones for the maintenance staff position, but she did not select him for the position. (*Id.* ¶ 33.) She wrote a note summarizing the interview that said, in part: "To me, Juan is not satisfactorily completing his duties as a groundskeeper thus I am compelled not to promote him." (*Id.*) She also relied on the recommendation of Ruiz that Jones was not qualified. (Def.'s LR 56.1(a)(3) Stmt. ¶ 47.) The maintenance staff position remained vacant until Park Forest hired Walsh for the position on February 9, 2007. (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 34.)

Jones continued to receive verbal warnings at Park Forest for sub-standard job performance between April 1 and May 7, 2007. (Def.'s LR 56.1(a)(3) Stmt. ¶ 49.) On May 8, 2007, Park Forest Board members during an executive session meeting reviewed Jones' job performance and found it unsatisfactory. (*Id.* ¶ 50.) On May 18, 2007, Jones met with Tas and

6

Ruiz in Tas' office to discuss Jones' job performance. (*Id.* ¶ 51.)  Park Forest contends that Jones voluntarily quit that day, a fact that is deemed admitted by Jones' failure to comply with Local Rule 56.1.  (*Id.* ¶ 52.)  Jones contends Tas terminated him, which is likewise deemed admitted by Park Forest's failure to comply with Local Rule 56.1.[2] (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 39.)  Because disputed facts are taken in the light most favorable to the non-moving party on summary judgment, the Court assumes for the purposes of the instant motion that Jones was terminated on May 18, 2007.


## Discussion

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To support whether a fact is genuinely disputed, a party must either "(A) cit[e] to particular parts of materials in the record, including depositions, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* 56(c)(1).

Moreover, the court "construe[s] all facts and draw[s] all inferences in the light most favorable to the non-moving party."  *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). "The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving

---

[2]The moving party must properly deny the non-moving party's LR 56.1 statement of additional facts in the same manner that the non-moving party must deny the moving party's statement of facts, lest those additional facts be deemed admitted.  *See* N.D. Ill. LR 56.1(a).

party." *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

## I.     § 1981 Race Discrimination

A § 1981 claim for race discrimination may be proceed by direct or indirect methods of proof, under the analytical framework that applies to Title VII claims. *O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002); *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) (stating that § 1981 and Title VII discrimination methods of proof are "essentially identical"). Here, Jones proceeds under the indirect, burden-shifting method of proof set out in *McDonnell Douglas*, which requires him to establish a *prima facie* case of race discrimination by showing that: "(1) [he] is a member of a protected class; (2) [he] is qualified for the position; (3) [he] was rejected for the position; and (4) the position was given to someone outside the protected class who was similarly or less qualified than [he]." *Hobbs v. City of Chi.*, 573 F.3d 454, 460 n.1 (7th Cir. 2009); *Jackson v. City of Chi.*, 552 F.3d 619, 622 (7th Cir. 2009). Satisfying all four prongs of the *prima facie* case "shifts the burden to the defendant 'to produce a legitimate, noninvidious reason for its actions.'" *Id.* (quoting *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008)). "If the defendant rebuts the prima facie case, the burden then shifts back to the plaintiff to show that the reasons proffered by the defendant are merely pretextual." *Id.*; *see Atanus*, 529 F.3d at 672.

"Pretext is . . . a lie, specifically a phony reason from some action." *O'Neal*, 293 F.3d at 1005 (quotation omitted). Jones "may establish pretext with evidence that the defendant[] w[as] more likely than not motivated by a discriminatory reason or that [its] explanations are not worthy of credence, *i.e.*, they are factually baseless, did not actually motivate the defendant[], or

8

were insufficient to motivate the adverse employment action." *Id.* A court does not sit as superpersonnel department reviewing a business's employment decisions. *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005).

In this case, Jones has failed to create a genuine issue of material fact regarding whether he was qualified for the position and whether Park Forest's rationale for selecting another candidate was a pretext. Because the two issues are so closely related, the Court addresses them together.

Park Forest hired Walsh for the maintenance staff position because Tas believed Jones' unsatisfactory performance on the grounds staff made him a less qualified candidate than Walsh. Jones offers no evidence to contradict that, from August 15, 2006 until his application and interview for the maintenance staff position in January 2007, he was performing his job unsatisfactorily. Jones received notice on October 21, 2006 that he needed to produce a motor vehicle insurance card. Jones admits that he drove a motor vehicle, against company policy and in violation of Illinois law, without carrying insurance. He admits that he took more sick days than was allotted by company policy in 2006. He was warned for using company cell phones to make personal calls. He received a written report about substandard work quality and insubordination. After Tas was promoted to property manager, she issued an ultimatum to Jones: produce a motor vehicle insurance card by the end of a three-day suspension on December 15 or be terminated. Presumably, Jones did so, as he was not terminated upon return to work. Tas also filled out an annual appraisal for Jones in December, marking his performance as unsatisfactory. These facts have been deemed admitted by Jones' failure to comply with Local Rule 56.1, and Jones offers no fact to contradict them in his statement of additional facts.

Furthermore, Tas relied in part on the recommendation of Ruiz in selecting Walsh for the position, and Jones does not claim that Ruiz held any racial animus against him. Given the overwhelming and undisputed facts in the record regarding Jones' substandard performance, the Court holds that Jones has established neither the element of his *prima facie* case that requires him to show that he was qualified for the maintenance staff position nor pretext. Showing up to work and adhering to one's employer's policies are basic qualifications that Jones admits he lacked. *See, e.g., Contreras v. Suncast Corp.*, 237 F.3d 756, (7th Cir. 2001) (stating that attendance and adherence to company policies are legitimate expectations). Further, he has not provided any evidence that Walsh had a history of attendance problems or failing to adhere to his employer's policies. That Walsh's application showed he had only three months of maintenance experience on his employment application and did not have certificates or diplomas in carpentry, plumbing, or electrical work is insufficient to create a triable issue as to whether Tas honestly believed Walsh was a better candidate for the position than Jones. These two facts do not speak to Tas' interview with Walsh, and merely address how his written application measured against the job description. Nor do they speak to Ruiz's recommendation of Walsh over Jones to Tas based on his knowledge of the two candidates. Therefore, Jones has failed to create a genuine issue whether Tas was compelled by Jones' track record as a groundskeeper to seek another applicant for the maintenance staff position or whether Tas believed that Walsh was more qualified. Because Jones has failed to create a triable issue as to whether he was qualified for the position for purposes of making out a *prima facie* case and as to whether Park Forest's reasons for selecting Walsh over him were a pretext, Jones' claim for race discrimination fails as a matter of law.

## II.    § 1981 Retaliation

Jones alleges that he suffered a retaliatory discharge by Park Forest after Tas found out he complained to Ruiz that Tas did not promote him to the maintenance staff because of discrimination. § 1981 retaliation claims are analyzed the same way as Title VII retaliation claims:

> There are two distinct ways in which a plaintiff may establish a *prima facie*
> case for unlawful retaliation.  First, the plaintiff may present direct evidence
> (evidence that establishes without resort to inference from circumstantial
> evidence) that [she] engaged in protected activity (filing a charge of
> discrimination) and as a result suffered the adverse employment action
> of which [she] complains. . . .  Second, the plaintiff may proceed under
> a framework similar to the *McDonnell Douglas* burden-shifting test by
> showing that: 1) after lodging a complaint about discrimination, 2)
> only [she], and not any otherwise similarly situated employees who
> did not complain, was 3) subjected to an adverse employment action
> even though 4) [she] was performing her job in a satisfactory manner.

*Sublett*, 463 F.3d at 740 (citations and quotations omitted); *see Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 399, 404 (7th Cir. 2007).

However, under either method, Jones' claim fails because there is no evidence that he engaged in a protected activity during his employment at Park Forest or complained of discrimination.  Jones claims that he complained to Ruiz that Tas discriminated against him because of his race when she failed to promote him to the maintenance staff.  (Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 37.)  However, the evidence he cites does not support that claim.  Rather, it shows that Jones asked Ruiz why *Ruiz* had not been promoted, which, as Ruiz explained, was because he declined the promotion.  (*See* Ruiz Dep. at 28-30.)  Without evidence of Jones' complaining, the retaliation claim must fail.  Moreover, Jones cannot satisfy the fourth prong of his *prima facie* case of retaliation, *i.e.*, that he was performing his job as groundskeeper in a satisfactory manner.  He was not performing his job satisfactorily from August 2006 to January

2007 for the reasons cited above pertaining to his § 1981 discrimination claims, and he further received verbal warnings for poor performance from April to May 2007 and an unsatisfactory review from an executive meeting in May 2007, the month he was terminated.[3] Jones has not presented any evidence that he was performing his job to the satisfaction of his employer from January to May 2007. Thus, Jones has failed to create a genuine issue as to a material fact regarding retaliation under either the direct or indirect method.

### III.    Retaliation Under Illinois Law

Jones alleges under Illinois common law that he was discharged in retaliation of whistleblowing activities, *i.e.*, complaining to Tas that Park Forest had not properly paid required health insurance benefit payments. (Second Am. Compl. ¶ 60.) In Illinois, an employer can terminate an at-will employee "for any reason or no reason." *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009); *accord Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. 1985). The tort of retaliatory discharge provides "a limited exception to this rule." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 568 (Ill. 1998). To state a claim for retaliatory discharge, "an employee must show that he was dismissed in retaliation for his activities, and that the dismissal was in contravention of a clearly mandated public policy." *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 875 (Ill. 1991); *Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878 (Ill. 1981).

The Court has already determined that reporting a company, in contravention of 820 Ill. Comp. Stat. 160/1, for failure to pay insurance premiums in a timely manner, or give the

---

[3] These facts are, again, deemed admitted because of Jones' failure to comply with Local Rule 56.1. The Court admonishes litigants to consult the local rules to avoid unnecessarily endangering their case on summary judgment.

employee thirty days' written notice that benefits will no longer be paid, is sufficient to state a claim for common law retaliatory discharge under Illinois law. *Jones v. Park Forest Coop. IV*, No. 09 C 2953, 2010 WL 748147, at *4 (N.D. Ill. Feb. 26, 2010). However, there is no dispute that Park Forest timely paid them. Rather, Jones complained about Park Forest's failure to reimburse *his* bills under the employee insurance policy, which is not conduct proscribed under the statute. *See* 820 Ill. Comp. Stat. 160/1 (2010) ("Any employer who promises in writing to make payments *to* an employee welfare plan . . . health plan, dental plan . . . .") (emphasis added). Thus, without the threat of criminal sanctions under the statute, Park Forest could not have retaliated against Jones in contravention of public policy. *See Jones,* 2010 WL 748147, at *4. ("The Act's criminal sanctions mean that an individual who reports a violation is the 'citizen crime-fighter' contemplated by *Palmateer.*"); *see also Palmateer*, 421 N.E.2d at 879-80.

Moreover, as to the causation element of retaliatory discharge, "the ultimate issue is the employer's motive: If the employer has a valid nonpretextual basis for discharging the employee, the employee loses." *Mertes v. Westfield Ford*, 220 F. Supp. 2d 904, 913 (N.D. Ill. 2002) (applying Illinois law); *accord Zuccolo v. Hannah Marine Corp.*, 900 N.E.2d 353, 359 (Ill. App. Ct. 2008). For the reasons discussed above, the Court holds that Jones has failed to create a triable issue as to whether he was performing his job to the satisfaction of Park Forest. Further, the Court holds that no reasonable jury could find Park Forest liable based solely on the temporal relationship between his complaint and his termination because six months elapsed between the date of his complaint on approximately December 13, 2006 and the date of his termination on May 18, 2007. *Cf. Zuccolo*, 900 N.E.2d at 360 (the relatively short time span of less than one month contributed genuine issue of fact as to employer's true intent). For these reasons, Jones' state law retaliatory discharge cause of action fails as a matter of law.

**Conclusion**

For the foregoing reasons, the Court grants in part and denies as moot in part Park Forest's motion to deem admitted its statement of facts and strike plaintiff's supplemental statement of facts in part [doc. no. 90] and grants Park Forest's motion for summary judgment [doc. no. 78].  This case is hereby terminated.

**SO ORDERED**

**August 19, 2011**

**ENTERED:**

**HON. RONALD A. GUZMAN**
**United States District Judge**